## Evans v. Erie Railroad Company.

*Negligence — Railroads—Master and servant—Fellow-servant rule—Risk of employment—Non-suit—Federal Employers' Liability Act of April 22, 1908.*

1. The Federal Employers' Liability Act of April 22, 1908, ch. 149, 35 Stat. at L. 65, abolished the fellow-servant rule. Under the act, if the injury was due to the negligence of a co-employee in the performance of his duty, that neglect must be attributed to the employer.

2. When assumption of risk is established, it is a complete bar to the action.

3. In an action under the Federal Employers' Liability Act, the doctrine of assumption of risk has no application when the negligence of a fellow-servant, which the injured party could not have foreseen or expected, is the sole, direct and immediate cause of the injury.

4. A and B were engaged in unloading ties from a truck. This was done by the two men taking up a tie, each at his end, and throwing it from the truck to the ground. B let go of his end of the tie before A was ready to let go, which caused A's end to strike A on the leg, resulting in the injury complained of. Before his employment with the defendant, A had had considerable experience in handling similar ties while working for another railroad; he was familiar with the fact that the taking up and dropping of the two ends of a tie were not always regular in time, and that while they were supposed to be simultaneous, they were, in fact, more or less irregular. A sued the employing railroad under the above act: *Held,* that he had assumed the risk and could not recover.  —

Rule to take off order of compulsory non-suit. C. P. Crawford Co., Nov. T., 1921, No. 36.

*McClintock & McClintock* and *Thomas & Thomas,* for plaintiff.

*Albert L. Thomas,* for defendant.

PRATHER, P. J., July 31, 1922.—Plaintiff brought this action against defendant company to recover damages for injuries sustained while in the employ of defendant as a laborer, loading and unloading railroad ties.

The action was brought under the Federal Employers' Liability Act of April 22, 1908, ch. 149, 35 Stat. at L. 65. In the complaint it was averred, and upon the trial conceded, that defendant was a corporation operating a line of railway as a common carrier in interstate commerce, and that plaintiff at the time he was injured was employed by defendant in such commerce.

As to the facts and circumstances relating to plaintiff's injury, plaintiff's evidence showed that on June 29th, and for several days prior thereto, he, with other employees of defendant company, was engaged in trucking ties on defendant's tracks to repair a trestle or bridge. The truck was about two

Evans *v.* Erie Railroad Company.

feet shorter than the ties, which were loaded thereon parallel to the railroad track upon which it was operated. When the truck was loaded, three or four men, including plaintiff, pushed the loaded truck to its destination. On this particular day the car had stopped, and perhaps three ties were thrown off by plaintiff and his helper, each standing at opposite ends of the ties, and each picking up his end. When the next tie was so picked up, plaintiff's fellow-worker threw it before plaintiff was ready to let go, which caused plaintiff's end to strike him on the leg, causing the injury complained of. Prior to this employment by defendant company, plaintiff had had considerable experience handling similar ties while working for the Pennsylvania Railroad Company. Plaintiff, from experience, was familiar with the fact that the picking up and dropping of the two ends of ties when so handled were not always regular in time, and that while the two acts were supposed to be simultaneous with each other, they were, in fact, more or less irregular.

From these facts it is urged that plaintiff's injury was due to the negligence of his co-employee in picking up and dropping or throwing his end of the tie too soon.

At the conclusion of plaintiff's case we directed a compulsory non-suit.

Two questions arise in the disposition of the pending motion: 1. Do the recited facts prove negligence upon the part of the defendant company? 2. Did plaintiff assume the risk of such an injury?

That the act complained of constitutes negligence for the consideration of the jury is not entirely clear. Whatever interpretation we give to the act, it must be considered as though done by the corporation itself.

In Illinois Central R. R. Co. *v.* Skaggs, 240 U. S. 66, the Supreme Court, considering the Federal Employers' Liability Act, held: "The inquiry must be whether there is neglect on the part of the employing carrier, and if the injury to one employee resulted 'in whole or in part' from the negligence of any of its other employees, it is liable under the express terms of the act. That is, the statute abolished the fellow-servant rule. If the injury was due to the neglect of a co-employee in the performance of his duty, that neglect must be attributed to the employer." See New York Central R. R. Co. *v.* Carr, 238 U. S. 260; Chesapeake & Ohio Ry. Co. *v.* De Atley, 241 U. S. 310, 313.

Without entering into any discussion of defendant's negligence, we think the compulsory non-suit was properly entered upon plaintiff's assumption of risk.

As there was no fact in issue relative to plaintiff's knowledge of the nature of the work and its manner of execution, and as the inferences to be drawn from the undisputed facts are certain, the question of assumed risk was for the court: Kennedy *v.* Pennsylvania R. R. Co., 1 Mon. 271.

Where assumption of risk is established, it is a complete bar to the action: Seaboard Air Line Ry. Co. *v.* Horton, 233 U. S. 492-503; Jacobs *v.* Southern Ry. Co., 241 U. S. 229, 235; Boldt *v.* Pennsylvania R. R. Co., 245 U. S. 441, 445.

In Boldt *v.* Pennsylvania R. R. Co., the Supreme Court said: "At common law the rule is well settled that a servant assumes extraordinary risks incident to his employment, or risks caused by the master's negligence, which are obvious or fully known and appreciated by him." Citing Gila Valley Street Ry. Co. *v.* Hall, 232 U. S. 94; Jacobs *v.* Southern Ry. Co., 241 U. S. 229, 235; Chesapeake & Ohio Ry. Co. *v.* De Atley, 241 U. S. 310, 313; Erie R. R. Co. *v.* Purucker, 244 U. S. 320, 324.

Evans *v.* Erie Railroad Company.

It is a well established principle that a servant assumes the ordinary risks of his employment. This rule of law was reiterated in Reed, Administratrix, *v.* Director General of Railroads, 267 Pa. 86, 89.

While the judgment which involved the application of this rule on appeal to the Supreme Court of the United States was reversed, the principle was distinctly recognized and re-affirmed in the following language: "In actions under the Federal Act, the doctrine of assumption of risk certainly has no application when the negligence of a fellow-servant, which the injured party could not have foreseen or expected, is the sole, direct and immediate cause of the injury. To hold otherwise would conflict with the declaration of Congress that every common carrier by railroad, while engaging in interstate commerce, shall be liable to the personal representative of any employee killed while employed therein when death results from the negligence of any of the officers, agents or employees of such carriers."

In the Reed case the risk was extraordinary, and the United States Supreme Court justified its reversal of the judgment upon the ground that "the injured party could not have foreseen or expected" the negligence complained of. The difficulty was not in the legal principle, but in its application to the facts.

The present case is a peculiar one. Diligence of counsel has failed to discover a Pennsylvania case involving any similar facts. We have the defendant at one end of an ordinary railroad tie lying on a truck, and about twenty inches from the ground, and the plaintiff at the other. Each has a satisfactory place to stand; each is at attention, with no other duty to divert his attention; their business is to unload these ties by taking hold of opposite ends and then throw or drop them; three ties have already been unloaded, they reach for the fourth one, when, according to plaintiff's contention, defendant picked his end up too soon, and while he, plaintiff, was picking up his end, threw or dropped the tie, causing the injury.

The picking up and dropping of these ties was an easy task. Plaintiff was not depending upon any signal by sign or word as to when to take hold or let go. By the very nature of the work, he must have depended upon his senses, muscular and mental, to protect him from injury. To hold otherwise under the undisputed facts is to make every owner of a lumber pile liable in damages to every employee who is engaged at either end of the boards to handle them, and in doing so should have his finger pinched or his shin bruised. The handling of one board might thus result in two actions, and two judgments against the employer.

For instance, A at one end might allege that B picked up his end too soon, thereby pinching his fingers; B, in return, might allege that A threw the board before he, B, was ready, thereby bruising B's shin.

This extreme statement is illustrative of how grievously every employer might be amerced in damages for injuries to his employees resulting from the ordinary operation of an ordinary employment attended with ordinary risks, and which the employer could not obviate, however vigilant.

In our opinion, only the clearest proof of negligence should permit a recovery in actions of this character. The proofs are not of this nature.

We are, therefore, of the opinion that *(a)* plaintiff's case does not establish the negligence of defendant; *(b)* that he assumed the risks of the injury complained of.

It follows that plaintiff's rule should be discharged.

Now, July 31, 1922, rule to take off order of compulsory non-suit is hereby discharged.

From Otto Kohler, Meadville, Pa.