Hart, J.
 

 Since no question was made as to any conflict of law between the state of Michigan where the cause of action arose and the state of Ohio as the forum of trial, we are justified in assuming that the law ’ applicable to the case is the same in both jurisdictions, or that the parties agreed or acquiesced in the assumption that the law was the same in both jurisdictions and was so applied in the trial of the case.
 

 The plaintiff alleged in his petition both negligence and willful and wanton misconduct on the part of the defendant. If the defendant was guilty of the latter, a recovery by plaintiff could not be defeated on the ground of his contributory negligence or assumption of risk.
 
 Universal Concrete Pipe Co.
 
 v.
 
 Bassett,
 
 130 Ohio St., 567, 200 N. E., 843, 119 A. L. R., 646.
 

 Although the jury’s answers were “yes” to an interrogatory whether the defendant’s employees had an intention and purpose to injure the plaintiff, and “yes” to an interrogatory whether the defendant completely failed to exercise any care whatsoever to see that plaintiff could safely get aboard the train, and “yes” to the question, “Was the defendant guilty of any negligence?”; yet, its answer to the question, if so “what was the negligent act or acts of the defendant?”, was; “a. Failure to exercise ordinary care in starting train before an intended passenger,
 
 i. e.,
 
 
 *298
 
 the' plaintiff, boarded train, b. Failure to exercise ordinary care in closing trap and vestibule door promptly upon leaving station.” In other Avords, the jury found the defendant guilty of only two of the acts of negligence which were comprehended in the first three of the ten specifications of negligent acts charged in the petition.
 

 The interrogatory requiring the jury to name the acts of negligence of the defendant was a proper inquiry and properly submitted.
 
 Davison
 
 v.
 
 Flowers,
 
 123 Ohio St., 89, 174 N. E., 137. The failure or inability of a jury to find the existence of a claimed act of negligence, in answer to interrogatories properly submitted and calling for a specification of the acts of negligence upon which it bases a general verdict’ is equivalent to a finding, on such claim of negligence, against the party having the burden to establish it. The reason for the rule is that a special verdict or answers to interrogatories must find facts, and it Avill be inferred that the failure to find a certain fact is due to the absence or insufficiency of evidence to support it. See
 
 Pennsylvania Rd. Co.
 
 v.
 
 Vitti, Admr.,
 
 111 Ohio St., 670, 146 N. E., 94;
 
 Noseda
 
 v.
 
 Delmul,
 
 123 Ohio St., 647, 653, 176 N. E., 571, 76 A. L. R., 1133, annotation 1143; 39 Ohio Jurisprudence, 1175, Section 440; 38 American Jurisprudence, 1095, Section 374;
 
 Atchison, T. & S. F. Rd. Co.
 
 v.
 
 Swarts,
 
 58 Kan., 235, 48 P., 953.
 

 By reason of these answers, finding and specifying two acts of negligence, all other alleged and claimed acts of negligence may be disregarded by the court in the consideration of this case. As a matter of fact, the failure of the jury to find other grounds of negligence on the part of the defendant was justified by the record.
 

 Does the record sustain the charge of willful and wanton misconduct?
 

 
 *299
 
 In the case of
 
 Universal Concrete Pipe Co.
 
 v.
 
 Bassett, supra,
 
 this court held:
 

 “2.
 
 Wanton misconduct is such conduct as manifests a disposition to perversity, and. it- must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury.
 
 (Higbee Co.
 
 v.
 
 Jackson,
 
 101 Ohio St., 75, third paragraph of the syllabus, and
 
 Reserve Trucking Co. v. Fairchild,
 
 128 Ohio St., 519, second paragraph of the syllabus, modified.)” See, also,
 
 Vecchio
 
 v.
 
 Vecchio,
 
 131 Ohio St., 59,
 
 1
 
 N. E. (2d), 624;
 
 Morrow
 
 v.
 
 Hume, Admx.,
 
 131 Ohio St., 319, 324, 3 N. E. (2d), 39;
 
 Jenkins
 
 v.
 
 Sharp,
 
 140 Ohio St., 80, 82, 83, 42 N. E. (2d), 755.
 

 Accepting the criterion heretofore laid down by this court in its definition of wanton misconduct, there is absolutely no evidence in the record of this case to support the special findings of the jury that the defendant’s employees had an intention and purpose to injure the plaintiff and that they exercised no care whatever for him; and the court cannot give such findings effect, if there was no evidence to support them.
 
 Davison
 
 v.
 
 Flowers, supra,
 
 page 96. Furthermore, by failing to specify in answer to the interrogatories, as negligent acts of which defendant was guilty, the grounds of negligence charged in. specifications 7, 8, 9 and 10 of the petition, the jury effectively found against the plaintiff on the issue of willful and wanton misconduct.
 

 . The next question in logical sequence to be determined is whether there is any evidence that the acts" of negligence affirmatively found by the jury to have been committed by the defendant were the proximate cause of plaintiff’s injury. In other words, were the broken promise of defendant’s conductor to hold the
 
 *300
 
 train for plaintiff and the failure of the defendant to close the trap and vestibule door of the train upon its leaving the station — both facts or situations known to the plaintiff when he was 75 feet away from the moving train and before he had attempted to board it while moving — the proximate cause' of plaintiff’s injury?
 

 The requisite of proximate or legal cause to sustain a recovery in a personal injury action is a limitation which the courts place upon a defendant’s responsibility for the consequences of his conduct. In such cases, actual causation is always essential to , liability, but it does not wholly determine it. Legal responsibility is limited to those causes so closely connected with the injurious result as to justify the imposition of liability. Thus, an efficient cause of a plaintiff’s injury intervening after defendant’s negligent act has been committed, contributory negligence or the assumption of the risk of injury by a plaintiff, which intervening cause, contributory negligence or assumption of risk brings about a plaintiff’s injury, may insulate the negligence of the defendant and preclude a.recovery.
 
 I
 

 “Where one party has been negligent, and the
 

 second party, knowing of such antecedent negligence, fails to use ordinary care to prevent an injury which the antecedent negligence rendered possible, and the injury follows by reason of such failure, the negligence of the second party is the sole proximate cause of such injury.”
 
 Bostwick
 
 v.
 
 Minneapolis & Pacific Ry. Co.,
 
 2 N. D., 440, 51 N. W., 781;
 
 Cincinnati, H. & D. Rd. Co.
 
 v. Kassen, 49 Ohio St., 230, 31 N. E., 282, 16 L. R. A,, 674.
 

 Likewise, where the proximate cause of an injury is referable to the conduct of the injured party after knowledge of the risk of injury and not to that of a
 
 *301
 
 defendant who in the first instance creates the risk, snch risk of injury is assumed by i the injured party.
 

 Incidentally, “there are situations where the defenses of assumption of risk and contributory negligence will overlap. The plaintiff’s conduct in accepting the risk may itself -be unreasonable, because the-danger is out of all proportion to' the interest which he is seeking to advance * * *. In all such cases, both defenses are available to the" defendant. * * * In working out the distinction, the courts have arrived at the conclusion that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, and that to the extent that this can be found recovery will be denied; while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be.
 
 [Schlemmer
 
 v.
 
 Buffalo, R. & P. Ry. Co.,
 
 220 U. S., 590, 55 L. Ed., 596, 31 S.
 
 Ct.,
 
 561;
 
 Erie Rd. Co.
 
 v.
 
 Purucker,
 
 244 U. S., 320, 61 L. Ed., 1166, 37 S. Ct., 629;
 
 Westcott
 
 v.
 
 Chicago Great Western Rd. Co.,
 
 157 Minn., 325, 196 N. W., 272.] The two may coexist, or either may exist without the other.
 
 [Miller
 
 v.
 
 White Bronze Monument Co.,
 
 141 Iowa, 701, 118 N. W., 518, 18 Ann. Cas., 957;
 
 Choctaw, O. &
 
 G.
 
 Rd. Co.
 
 v.
 
 Jones,
 
 77 Ark., 367, 92 S. W., 244, 4 L. R. A. (N. S.), 837, 7 Ann. Cas., 430.] The difference frequently is one between risks which were in fact known to the plaintiff, or which are so obvious that he must he taken to have known of them [See
 
 Gila Valley,
 
 G.
 
 & N. Ry. Co. v. Hall,
 
 232 U. S., 94, 58 L. Ed., 521, 34 S. Ct., 229;
 
 Chesapeake & O. Ry. Co.
 
 v.
 
 De Atley,
 
 241 U. S., 310, 60 L. Ed., 1016.] and risks which he merely might have discovered by the exercise of ordinary care.” Prosser on Torts, 378, 379;
 
 Yazoo & M.
 
 V.
 
 Rd. Co.
 
 v.
 
 Wright,
 
 235 U. S., 376,. 59 L. Ed., 277, 35 S. Ct., 130;
 
 Erie Rd. Co.
 
 v.
 
 Purucker, supra; Cincin
 
 
 *302
 

 nati, N. O. & T. P. Ry. Co.
 
 v.
 
 Thompson,
 
 149 C. C. A., 211, 236 F., 1.
 

 A person, who brings about a condition or situation obviously dangerous to himself by voluntarily exposing himself to a hazard created by another, assumes. the risk of injury so created and thereby relieves such other of legal responsibility for an injury resulting from such exposures.
 

 In the instant case, plaintiff’s own evidence shows that the defendant’s conductor promised the plaintiff to hold the train until plaintiff could look for his pass at his house trailer or bunkhouse located at the Adrian station, 250 feet from the entrance to the train; that when plaintiff came out of the house trailer he ran toward the train and was 75 feet from it when it started to move; that he ran to the side of a coach and waited until the handhold came up to him when he attempted to board the train but slipped and fell; that
 
 ‘
 
 ‘ the way it was coming I had to grab it with my right hand, and it jerked it right out of my hand”; that the trap and door were open when he first looked at it and when he grabbed the handle; that the train at the time he attempted to board it was moving “just as slow as a man could walk, maybe two or three miles an hour * * *, wouldn’t be going a bit more than two or three miles an hour”; and that the train had moved from its standing position at the time he grabbed the handhold “a little over a car length.”
 

 When asked as to his experience in boarding moving freight trains or moving trains of any sort during the time he had worked for the defendant company, over a period of 16 years, plaintiff replied: “At this particular time I was on and off cars anywheres from 50 or 100 times a day. That was right in my work, getting on and off cars.”
 

 If the mere starting and moving of the train at the rate of two or three miles per hour was hazardous to
 
 *303
 
 the plaintiff and constituted actionable negligence on the part of the defendant, then the plaintiff, as an experienced passenger train brakeman, was as well qualified as any of the defendant’s employees to judge the hazards of the situation.
 

 Under these circumstances, what was the proximate cause of his injury?
 

 The plaintiff had the last opportunity to avoid his injury. He made the final appraisal of the danger and the final decision to assume the risk of injury. In the light of his experience and knowledge of the situation, his affirmative act proximately caused his own injury, and this conclusion follows as a matter of law. He is not now in position to claim that the defendant was negligent and at the same time to say that he was free from negligence contributing to his own injury or that he did not assume the risk of injury.
 

 In
 
 Ohio Central Traction Co.
 
 v.
 
 Mateer,
 
 12 C. C. (N. S.), 327, 21 C. D., 478, affirmed without opinion, 81 Ohio St., 494, 91 N. E., 1134, the court held that one attempting to board an interurban car which was slowed down preparatory to make a stop, but while it was still moving at the rate of four or five miles an hour, assumed the risk of the perils incident thereto and was precluded from recovering for an injury sustained in such attempt.
 

 The plaintiff in the instant case claims that the question whether he, in attempting to board a slowly moving train, was guilty of misconduct is a question of fact for the jury under the facts and circumstances of this case. But where the facts are undisputed and it is shown, as in this case, that a prospective passenger attempting to board a moving train is an experienced railroad man with full knowledge equal to that of the train crew of the circumstances relating to the hazard, and where minds cannot differ as to the assumption of risk on the part of the passenger, the
 
 *304
 
 court may find as a matter of law that the prospective passenger’s own conduct was the proximate' cause Tof his injury.
 
 Lake Shore & Michigan Southern Ry. Co.
 
 v.
 
 Liidtke, an Infant,
 
 69 Ohio St., 384, 69 N. E,, 653;
 
 Davis, Agent,
 
 v.
 
 Atlas Assurance Co., Ltd.,
 
 112 Ohio St., 543, 147 N. E., 913;
 
 Foss-Schneider Brewing Co.
 
 v.
 
 Ulland,
 
 97 Ohio St., 210, 119 N. E., 454, 4 A. L. R., 1098;
 
 Armour & Co.
 
 v.
 
 Harcrow,
 
 217 F., 224.
 

 Defendant’s motion for judgment notwithstanding the verdict should have been sustained.
 

 The judgment of the Court of, Appeals is reversed and final judgment is rendered for the defendant.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias and Zimmerman, JJ., concur.
 

 Bell, J., concurs in judgment.
 

 Turner, J., dissents.
 

 Sohngen, J., not participating.